IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

      Case No. C2-04-104
      Judge Edmund A. Sargus, Jr.
      Magistrate Judge Norah McCann King

STEVEN R. BURCHFIELD,
    et al.,

      Defendants.

## OPINION AND ORDER

Plaintiff, United States of America, acting through the United States Department of Agriculture, Rural Housing Service ("United States"), moves the Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment against Defendants Jane and Douglas Brownfield's ("Brownfields") counterclaim. (Doc. #23). Defendant, Old Canal Financial Corp., ("Old Canal"), also moves the Court for summary judgment on the Brownfields' cross-claims against it. (Doc. #27).[1] For the reasons that follow, Motions for Summary Judgment filed by the United States and Old Canal are granted.

---

[1] The Court recently granted the United States' motion to amend the complaint to dismiss former Defendant, Countrywide Home Loans, Inc., and to add Old Canal Financial Corporation. Countrywide had moved for summary judgment prior to this amendment. Because Old Canal stands in the same position as former Defendant, Countrywide, the Court also deemed Countrywide's motion for summary judgment to be filed by Old Canal. As such, this Opinion and Order relates to Old Canal and all references to the owner of the second mortgage at issue is this case refer to "Old Canal."

## I.

On July 5, 1996, Defendant, Steven R. Burchfield, and his former wife, Jodi L. Burchfield, executed and delivered a mortgage agreement to the Farmers Home Administration ("FHA"), now known as the Rural Housing Service ("RHS"). The real property subject to the mortgage is located at Lot 208 West Fernwood Drive in Toronto, Ohio. The Burchfields borrowed from the United States' government the principal amount of the mortgage, $69,960.00, plus interest on the unpaid balance at a rate of 7.75%.

On April 6, 1998, as part of a divorce agreement, Jodi L. Burchfield deeded her half interest in the real property by quit-claim deed to Defendant Steven Burchfield. On May 5, 1998, Steven Burchfield borrowed $18,500 from First Indiana Bank and signed a promissory note. The loan was secured by a second mortgage on the property. First Indiana Bank assigned its interest in the promissory note and mortgage to First Plus Financial, Inc. Countrywide Home Loans, Inc., assumed the rights under the promissory note and mortgage as the successor-in-interest to First Plus Financial, Inc. Finally, Defendant Old Canal Financial Corp. assumed these rights and recently became a party to this action.

On August 30, 2000, Burchfield sold the property to Douglas Brownfield and Brownfield's mother, Jane Brownfield, though a land installment contract for the price of $73,000.00. The Brownfields paid Burchfield $4,000 as a down-payment and financed the remaining $69,000 at 8% interest over the course of the 30-year term of the contract. The document was recorded.

Under the terms of the land installment contract, when the Brownfields paid the entire purchase price and other amounts in full, Mr. Burchfield would convey the premises to the Brownfields by providing title through a general warranty deed. In particular, the land contract

provides that "[w]hen the purchase price and all other amounts to be paid by Buyer pursuant to this contract are fully paid, Seller shall convey the premises to Buyer by transferable and recordable general warranty deed with release of dowers, if required, warranting good and marketable, fee simple title to the premises. . . ." (Pl's Aff. Exh. A, ¶¶ 10, 11, Exh. 4.)

The FHA and Old Canal continued to hold the mortgages on the property. The mortgages are not disclosed in the land installment contract. The Brownfields maintain that Mr. Burchfield did not disclose the existence of the mortgages at the time of the sale.

The United States and Old Canal argue that the Brownfields violated two terms of the land installment contract which caused a default. Specifically, the United States alleges that Douglas Brownfield filed for a Chapter 7 bankruptcy on September 11 2001, thereby violating the terms of the installment contract that define a default. Under the contract, a default occurred "[i]f an Order for Relief under any bankruptcy laws of the United States is issued naming BUYER as debtor. . . . " (Pl's Exh. A, ¶¶10-11, 13, Exh. 4.) Additionally, the United States and Old Canal contend that the Brownfields' checks in November, 2001, August, 2002 and December, 2002 to Burchfield were all returned by the bank for insufficient funds. (Pl's Exh. A, ¶ 14.) The United States contends that the Brownfields' repeated failure to pay violated the terms of the installment contract and caused a default. Further, the United States contends that the Brownfields' bad checks to Mr. Burchfield prohibited Burchfield from paying on his mortgage with FHA and caused foreclosure of the property.

Mr. Burchfield presently lives in Florida. In February, 2003, he received a Notice of Intent to Foreclose from the Rural Housing Service as a result of the monetary default on the mortgage. The Brownfields continue to live on the subject property and have not made payments

-3-

due on the land contract since February, 2003 when the government appeared on the property to foreclose. The Brownfields contend that they were current on the payments under the land installment contract until they learned of the foreclosure and that they covered the four payments that were returned for insufficient funds within 30 days thereafter. The Brownfields allege that they have invested over $75,000 in improvements on the property, which enhanced its value by $35,000.00 and have provided professional appraisals to support this claim. The Brownfields believe that Burchfield kept the payments that they sent to him without paying the mortgages before Burchfield ultimately filed for bankruptcy himself on August 28, 2002.

Burchfield stopped making loan payments to both the FHA and Old Canal. The United States and Old Canal allege that he is in default under both mortgages. Mr. Burchfield is proceeding without an attorney in this matter, has not pursued his rights against the Brownfields under the land contract and has not filed a forfeiture or foreclosure action against them.

The FHA appeared on the premises for the purpose of foreclosure in February of 2003. Upon foreclosure notice, the Brownfields filed a complaint against the Burchfields, the Department of Agriculture and Old Canal. [2] On February 6, 2004, the United States filed the instant foreclosure action.[3]

In the foreclosure action, the United States is seeking the principal, interest and interest credit subsidy from Defendant Steven R. Burchfield, totaling $77,795.69 plus interest at the rate of $13.8739 per day from January 22, 2004. The United States has also sued the Brownfields

---

[2] *Brownfield v. Burchfield*, Case No. C2-03-591 (S.D. Ohio), removed to this Court from the Jefferson County, Ohio Court of Common Pleas on July 8, 2003.

[3] The prior case, *Brownfield v. Burchfield*, Case No. C2-03-591, was closed in deference to the instant foreclosure action.

-4-

given their potential interest in the property. The United States seeks to establish the superiority of its creditor lien. The Brownfields counter-claim against the United States and cross-claim against Old Canal, claiming that they have acquired a superior equitable lien on the property by virtue of the land installment contract, and seek an option to purchase the premises for its value as appraised without the improvements, or, in the alternative, that they be paid for the value of improvements.

The United States now moves for summary judgment on the Brownfields' counterclaim. Old Canal similarly moves for summary judgment on the cross-claims asserted against it by the Brownfields, incorporating by reference the Motion for Summary Judgment filed by the United States and arguing that the doctrine of unclean hands prohibits application of the Brownfields' equitable claims.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment

will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

The Brownfields assert that they are entitled to the value of the improvements they made to the premises based upon the Ohio Occupying Claimant's Law, Ohio Rev. Code § 5303.08. The Brownfields also assert the equitable doctrines of melioration and unjust enrichment in support of

their to claims.[4]

A.  **Ohio's Occupying Claimant Law**

Ohio Rev. Code § 5303.08 provides as follows:

A person who, without fraud or collusion on his part, obtained title to and is in the quiet possession of lands or tenements, claiming to own them, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant, or his heirs, is paid the value of lasting improvements made by the occupying claimant on the land, or by the person under whom he holds, before the commencement of suit on the adverse claim by which such eviction may be effected, unless the occupying claimant refuses to pay to the party establishing a better title the value of the lands without such improvements, on demand by him or his heirs, when such occupying claimant holds:

(A) Under a plain and connected title, in law or equity, derived from the records of a public office;

(B) By deed, devise, descent, contract, bond, or agreement, from and under a person claiming a plain and connected title, in law or equity, derived from the records of a public office, or by deed authenticated and recorded; . . . .

Ohio Rev. Code § 5303.08. The United States and Old Canal contend that the Brownfields may not avail themselves of this statute because Steven Burchfield retained the title to the subject property throughout the duration of the land contract and that the Brownfields' title was contingent upon final payment of all the installments due under the land contract.

The Court concludes that the Occupying Claimant Law does not apply under the circumstances presented here and the Brownfields may not avail themselves of the protections of the

---

[4] The Court notes that it appears that neither the United State nor Old Canal seek to deprive the Brownfields from their right to pursue the value of the improvements. While the United States and Old Canal seek the full value of their loans to Steven Burchfield, the value of the outstanding loans does not meet or exceed the appraised value of the subject property. The United States and Old Canal represent that the proceeds of the sale of the subject property will be available to the remaining creditors to apportion, including the Brownfields. Whether that is true depends on the sole price at future sale and otherwise does not effect the merits of the claims.

statute. The terms of the land contract were never fulfilled and the Brownfields never gained title to the land. A "land installment contract" is defined as follows:

> [A]n executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, *while the vendor retains title to the property as security for the vendee's obligation.*

Ohio Rev. Code § 5313.01(A). Although as vendees under the land installment contract, the Brownfields acquired an equitable interest in the land,[5] by the very nature of the agreement, Mr. Burchfield retained title to the property.[6]

Furthermore, the provisions of the Occupying Claimant Law do not apply to a party who knows that his or her interest may terminate upon some condition or event. *Quill v. R.A. Inv. Corp.*, 707 N.E.2d 35, 39 (Ohio Ct. App. 1997)(citing *Bartholomew v. Rothrock*, 21 Ohio Law Abs. 57, 58 (Ohio Ct. App. 1935)). Such a party cannot assert ownership against the other party lawfully exercising its reversionary, executory, or remainder interest. The Brownfields were aware that their interest could be forfeited to Burchfield upon a breach of the covenants in the land installment contract. In this regard, the provisions of Ohio Rev. Code § 5303.08 do not apply.

---

[5] A "vendee" is a "person who acquires an interest in property pursuant to a land installment contract, or any legal successor in interest to that person." Ohio Rev. Code § 5313.01(D). "'The vendee obtains an equitable estate entitling him generally to all the incidents of ownership. The vendee has the right to use the property free from interference of the vendor . . . .'" *Wood v. Donahue*, 136 Ohio App. 3d 336, 340, 736 N.E.2d 556, 559 (Ohio App. 1st Dist. 1999)(quoting *Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24, 484 N.E.2d 186, 189 (Ohio App. 1st Dist. 1984)).

[6] Payment for lasting improvements under the Occupying Claimant Law can be awarded only if the occupying claimant acquired title to the disputed premises in a manner designated by the statute. The Brownfields claim title by ". . . contract . . . from and under a person claiming a plain and connected title. . . ." O.R.C. § 5303.08(B). Because the Brownfields never acquired title and for the reasons stated above, however, the Court concludes that the Occupying Claimant Law does not apply.

Finally, the Brownfields were aware that they lacked evidence of property title to the property at the time they entered into the initial agreement for the land installment contract. At all times relevant to this case, the mortgages in favor of the United States and Old Canal were of public record in the Office of the Jefferson County Recorder. As such, they are not entitled to relief under the Occupying Claimants Law. The Brownfields concede that "Defendant Burchfield provided no evidence of Title" when they executed the land contract. (Brownfields' Counter-Claim and Cross-Claim, Count One.) "'No allowance can be made under [the Ohio Occupying Claimant's Law] for improvements placed upon real estate by an occupying claimant if at the time the improvements were made the claimant knew that there were defects in the title under which he claimed." *Smith v. Vankirk*, 76 N.E.2d 924 (Ohio Ct. App. 1945). Further, "[b]efore plaintiff is entitled to compensation under occupying claimants act it must appear that the title which he received . . . was such as would justify . . . making lasting improvements upon the premises deeded to them." *Bartholomew v. Rothrock*, 21 Ohio Law Abs. 57 (Ct. App. Ohio 1945). Although the Brownfields contend that Burchfield never discussed the existence of the prior mortgages, they acknowledge that Burchfield did not provide any evidence of good title on the property when they executed the land installment contract. Therefore, they cannot justify application of the Ohio Occupying Claimant statute. For these reasons, the Motions for Summary Judgement on this claim are **GRANTED**.

**B.     Melioration**

The United States and Old Canal also argue that the Brownfields cannot rely on the equitable doctrine of melioration because they lack quiet title to the property. The United States and Old Canal contend that the doctrine does not apply because the Brownfields were aware at the time they entered into the land contract that Burchfield had not provided evidence of proper title. Old Canal

adds that the Brownfields are not entitled to invoke the equitable doctrine because the Brownfields have unclean hands in that they breached the land installment contract.

Generally, all improvements made upon real estate become a part of the freehold interest and the property of its owner. *Preston v. Brown*, 35 Ohio 18, 28 (Ohio 1878). The common law recognized no right to compensation for improvements mistakenly made on the premises of another, except by way of a setoff against a claim of the owner for rents, profits, or damages. *See* Compensation for improvements made or placed on premises of another by mistake, 57 A.L.R. 2d 263 (discussing common-law rule, and collecting cases). The matter most frequently arises in an action brought by the true owner of the land for ejectment of an individual who has mistakenly improved the land. As stated by an Iowa court in a nineteenth century case, "[b]y the English and American common law, the true owner recovers his land in ejectment, without liability to pay for improvements, which may have been made upon it by an occupant without title." *Parsons v. Moses*, 16 Iowa 440, 1864 WL 222 (Iowa 1864).

In the early nineteenth century, considerable debate took place over the idea of expanding equity to provide a remedy to mistaken improvers. *See, e.g, Ohio Dept. of Adm. Serv. v. Morrow*, 67 Ohio App. 3d 225, 586 N.E.2d 259 (4th Dist. Gallia County 1990) (recognizing that "[e]ven in circumstances where the occupying claimant statute does not apply, equity has, historically, been permitted to ameliorate the harsh effect of the general rule of common law that improvements upon real estate became a part of the freehold and the property of its owner"). Thus, in Ohio, "[a] *bona fide* occupant, sued by the owner of the premises for rents and profits, may, at law, recoup the value of the meliorations by him made while in the occupancy of the premises. *Preston,* 35 Ohio at 28 (citing, *inter alia, Coulter's Case*, 5 Coke, Rep. 30a, 77 Eng. Rep. 98 (K.B. 1599). "It is a familiar

rule, which a court of equity always enforces, that if an owner of an estate stands by and suffers another, acting in good faith and without notice of his title, to place improvements thereon, which add permanent value to the estate, such improvements will constitute a lien thereon." *Id.* As the Ohio Supreme Court noted long ago:

> The equity is equally as strong where the improvements are added by one in possession, under an agreement to purchase, made with the equitable owner, to the knowledge and with the acquiescence of the trustee of the legal title, and in the belief, which such purchaser is justified in entertaining, that the legal title will ultimately be conveyed to him. To permit the owner, in such case, to enjoy the improvements without making compensation therefor, would be quite as unjust as to permit one standing by and concealing his title to enjoy improvements made by another in the belief that the latter was improving his own land.

*Id.*

In this case, the Brownfields essentially argue that they have mistakenly improved the land based on their expectancy, by virtue of the land installment contract with Burchfield, that never ripened into title. To seek the aid of equity, however, the Brownfields must demonstrate good faith in their claim for melioration for the improvements they made to the land.

The Court concludes that the Brownfields were, at the very least, careless or insufficiently diligent in concluding that the property was their own to improve. The good faith requirement is not satisfied in situations in which the mistaken occupier has knowledge of facts which, as a reasonable person, would require him or her to investigate and discover an adverse claim on the title. *See, e.g., Preston*, 35 Ohio St. at 29-30; *Morrow*, 67 Ohio App. 3d 225, 233, 586 N.E.2d 259, 264 (noting compensation will be allowed in equity for mistaken improver when occupant is found to have been under a "good-faith reasonable belief" that he was owner of property); *see also Worley v. Ehret*, 36 Ill. App. 3d 48, 343 N.E.2d 237, 245 (5th Dist. 1976) ("Not only did the defendant fail to search the

record of her chain of title, but also she failed to take any steps to insure that the land which she occupied was the same as the land for which she held a deed."); *Mid-State Homes, Inc. v. Martin*, 1969 OK Civ. App. 3, 465 P.2d 791, 794 (Okla. Ct. App. 1969) ("there was no common boundary line between [the lot improved and the lot actually owned] and a casual inspection of the county records ... would have revealed the ownership and location of the respective ... lots.").

Here, the Brownfields acknowledge that they entered into the land contract without any investigation of Burchfield's title. The fact that the Brownfields claim that Burchfield had an obligation to notify them of the mortgages under the Ohio Rev. Code § 5313.02 as part of the mandatory, minimum contacts of a land installment contract, is of no consequence. The Brownfields entered in the land installment contract four years after the first FHA mortgage and two years after Burchfield encumbered the land with the second mortgage. These mortgages were on record in the Jefferson County recorder's office at the time the Brownfields executed the land installment contract with Burchfield. Even an informal review of the county records would have revealed these mortgages. As such, the Brownfields are not in the same position of an innocent purchaser without notice of any infirmity to title for whom equity should step in to provide the full value of the improvements and meliorations.[7]

---

[7] As the United States points out, any right to a dollar-for-dollar recovery for the value of the improvements is offset by the fact the Brownfields have obtained more than a $15,700 benefit here because they have lived on the property without paying the $506 monthly payment since February 2003.

The United States' Motion for Summary Judgment on the Brownfields' counterclaim and Old Canal's Motion for Summary Judgment on the Brownfields' cross-claim are therefore **GRANTED** in this respect.

### IV.

For the foregoing reasons, the United States' Motion for Summary Judgment (Doc. #23) and Old Canal's Motion for Summary Judgment (Doc. # 27) are **GRANTED**. This case proceeds as to the principal foreclosure claims that are presently before the Court.

**IT IS SO ORDERED.**

         9-27-2005
**DATED**

                              EDMUND A. SARGUS, JR.
                              UNITED STATES DISTRICT JUDGE