IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.

    Case No. C2-04-104
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Norah McCann King

**STEVEN R. BURCHFIELD,**
    **et al.,**

    **Defendants.**

## OPINION AND ORDER

As set forth in the Court's previous Opinion and Order granting Plaintiffs' Motions for Summary Judgment, in this matter, the United States of America, acting through the United States Department of Agriculture, Rural Housing Service ("United States"), seeks to foreclose on property occupied by Jane and Douglas Brownfield ("Brownfields"), and owned by Steven Burchfield. The Court has already addressed the principle matters relating to the superiority of the United States' mortgage lien on the subject property, as well as the lien of a second mortgage held by Old Canal Financial Company. This matter is now before the Court for consideration of the Brownfields' Motion for Summary Judgment on their cross-claim against Steven Burchfield, and Burchfield's corresponding Motion for Summary on the same cross-claim. For the reasons that follow, both Motions are denied.

**I.**

The Court has set forth the factual background of this case in detail in its previous Opinion and Order, and will not repeat the history of this matter here except to the extent necessary to address the issues raised in the parties' Motions.

The subject property is located at 738 West Fernwood Drive in Toronto, Ohio. Steven R. Burchfield, and his former wife, Jodi L. Burchfield, purchased the real property on July 5, 1996. Steven and Jodi Burchfield executed and delivered a mortgage agreement to the Farmers Home Administration ("FHA"), now known as the Rural Housing Service ("RHS"). The Burchfields borrowed from the United States' government the principal amount of the mortgage, $69,960.00, plus interest on the unpaid balance at a rate of 7.75%. The deed and mortgage were duly recorded in the Jefferson County Recorder's Office on July 5, 1996.

On April 6, 1998, as part of a divorce agreement, Jodi L. Burchfield deeded her half interest in the real property by quit-claim deed to Steven Burchfield. On May 5, 1998, Steven Burchfield borrowed $18,500 from First Indiana Bank and signed a promissory note. The loan was secured by a second mortgage on the property. The mortgage was duly recorded in the Jefferson County Recorder's Office on May 11, 1998.[1]

In July of 2000, Burchfield moved to Jonesboro, Georgia to pursue a career in law enforcement with the Atlanta Police Department. Burchfield's father, John Burchfield, agreed to help his son sell the property. John Burchfield spoke to an acquaintance, Jane Brownfield, about Steven's property. John Burchfield knew Jane Brownfield because he had previously entered into

---

[1] The second mortgage has been assigned several times, and now is held by Old Canal Financial Corporation.

a land installment contract with her in connection to property he owned in Toronto, Ohio.

Because she could not obtain financing, Jane Brownfield expressed her interest in purchasing Steven Burchfield' property through a land installment contract. On the date that Jane Brownfield was to execute the contract, John and Steven Burchfield learned for the first time that Jane wanted her son, Douglas Brownfield, to be named as an additional vendee on the land installment contract. At the time the land installment contract was executed, Steven Burchfield was living in Georgia. He had never met Jane or Douglas Brownfield.

Prior to signing the land installment contract, John Burchfield informed Jane Brownfield, in the presence of Steven Burchfield's mother, Janet Burchfield, that there was a mortgage encumbering the property. In particular, John Burchfield informed Jane Brownfield that it was imperative that she make all the payments under the land installment contract on time because Steven would still be making mortgage payments to the Farmers Home Administration. Jane Brownfield does not deny that she was aware of that a mortgage encumbered the property at the time she and her son, Douglas, entered into the land installment contract. The mortgages, however, are not disclosed in the land installment contract. Specifically, the land installment contract provides under the section "Lien of Record," that "[i]t is understood by and between SELLER and BUYER that the Property is subject to terms and conditions as follows:". The space following this statement is blank.

After the Brownfields signed the document, it was forwarded to Steven Burchfield in Georgia for signature. The land installment contract was recorded in the Jefferson County Recorder's Office on August 30, 2000. Neither the Brownfields nor the Burchfields were represented by an attorney in the transaction. The land installment contract itself is a pre-printed form document on which the

parties hand-wrote the applicable terms.

The Brownfield agreed in the land installment contract to a price of $73,000.00. The Brownfields paid Burchfield $4,000 as a down-payment and financed the remaining $69,000 at 8% interest over the course of the 30-year term of the contract. Under the terms of the contract, the Brownfields were to make payments in the amount of $506.46 on the fifteenth day of each month. A late charge of 5% was due if the payments were 10 days late.

Almost immediately after entering the land installment contract, the Brownfields became delinquent as to the payments. In Autumn of 2000, Steven Burchfield spoke by telephone with Jane Brownfield about the need to make timely payments because he still was required to make his mortgage payments. He also sent her a letter in the fall of 2000 with a copy of the FHA mortgage statement declaring possible foreclosure because of late payments. He explained to Jane Brownfield that her delinquent payments could cause the mortgage company to foreclose on the property. (S. Burchfield Aff., ¶ 17.)

Douglas Brownfield filed for a Chapter 7 bankruptcy on September 11, 2001, which Burchfield contends constituted a default under the land installment contract. Under the terms of the land installment contract, a default occurs "[i]f an Order for Relief under any bankruptcy laws of the United States is issued naming BUYER as debtor. . . . " (Land Installment Contract, at p. 3; S. Burchfield Aff., Exh. 7.) Moreover, in his petition, Douglas Brownfield listed Steven Burchfield as a creditor pursuant to the land installment contract, valued the property at $72,000, and indicated that Burchfield's interest in the property was $68,000.

The Brownfields' checks in November, 2001, August, 2002 and December, 2002 to Steven Burchfield were returned by the bank for insufficient funds. (S. Burchfield Aff., ¶ 18.) Burchfield

spoke to Jane Brownfield by telephone following the first bad check and explained again that it was crucial that he receive timely and proper payments. He also contacted Jane Brownfield several times by telephone between March and may 2002 in an attempt to persuade her to obtain a loan to purchase the property outright. (S. Burchfield Aff., ¶¶ 19-20.)

In February, 2003, Burchfield received a Notice of Intent to Foreclose from the Rural Housing Service as a result of monetary default on the mortgage. Prior to February 2003, Burchfield had applied all payments received from the Brownfields to the mortgage with the FHA. The Brownfields continue to live on the subject property and have not made payments due on the land contract since February, 2003 when the government appeared on the property to foreclose. To date, they have failed to make over $20,000 in payments under the land installment contract and failed to pay any of the associated late fees. Nor have the Brownfields tendered their payments into an escrow account.

Steven Burchfield filed for bankruptcy on August 28, 2002. Burchfield maintains that he was forced into bankruptcy as a result of not receiving timely payments due under the land installment contract. (S. Burchfield Aff., ¶ 23.)

The Brownfields contend that they were current on the payments under the land installment contract until they learned of the foreclosure and that they covered the four payments that were returned for insufficient funds within 30 days thereafter. The Brownfields allege that they have invested over $75,000 in improvements on the property, which enhanced its value by $35,000.00. The Brownfields never requested consent from Steven Burchfield to make these improvements.

Upon foreclosure notice, the Brownfields filed a complaint against Burchfield, the

Department of Agriculture and Old Canal.[2] On February 6, 2004, the United States filed the instant foreclosure action.[3] By previous Opinion and Order, the Court found that the United States' mortgage was superior, notwithstanding the Brownfields' claim that they held a superior equitable lien on the property by virtue of the land installment contract. The Court ordered the matter to proceed on the foreclosure. The Brownfields, however, cross-claimed against Burchfield, and sought summary judgment on their claim. Burchfield, to that point not represented by counsel, then retained an attorney, who appropriately moved for extensions of time in which to respond to the Brownfields' Motion for Summary Judgment. In response, Burchfield opposed the Brownfields' Motion and sought summary judgment for himself the claims.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt

---

[2] *Brownfield v. Burchfield*, Case No. C2-03-591 (S.D. Ohio), removed to this Court from the Jefferson County, Ohio Court of Common Pleas on July 8, 2003. Burchfield, proceeding without an attorney at this point, filed a general answer to the complaint denying liability.

[3] The prior case, *Brownfield v. Burchfield*, Case No. C2-03-591, was closed in deference to the instant foreclosure action.

as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

In their Motion for Summary Judgment, the Brownfields assert that Burchfield violated Ohio Revised Code § 5313.02 by failing to disclose the existence of the mortgages with the FHA and Old Canal in the land installment contract and because the balance due under the land contract exceeded

the value of Burchfield's two mortgages. The Brownfields also assert fraud and false representation in association with Burchfield's alleged failure to the existence of and balances due on the mortgages.

Because he was unrepresented through the majority of this action, Burchfield has not asserted claims against the Brownfields for breach of the land installment contract. Nor has Burchfield sought to cause the Brownfields to forfeit their interests in the property due to their clear default in payment since February 2003 or otherwise seek relief pursuant to Ohio Rev. Code §§ 5313.05–.08.

Ohio Revised Code § 5313.02 defines the formalities and sets forth the minimum contents of land installment contracts in the State:

> (A)  Every land installment contract shall be executed in duplicate, and a copy of the contract shall be provided to the vendor and the vendee. The contract shall contain at least the following provisions:
>
> * * * *
>
> (10)  A statement of any encumbrances against the property conveyed;
>
> * * * *
>
> (12)  A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located;
>
> * * * *
>
> (B)  No vendor shall hold a mortgage on property sold by a land installment contract in an amount greater than the balance due under the contract, except a mortgage that covers real property in addition to the property that is the subject of the contract where the vendor has made written disclosure to the vendee of the amount of that the [*sic*] mortgage and the release price, if any, attributable to the property in question.

Ohio Rev. Code § 5313.02. Further, Ohio law provides an enforcement mechanism to vendees if a land installment contract does not contain the necessary contents:

> Upon the failure of any vendor to comply with Chapter 5313. of the Revised Code, the vendee may enforce such provisions in a municipal court, county court, or court of common pleas. Upon the determination of the court that the vendor has failed to comply with these provisions, the court shall grant appropriate relief.

Ohio Rev. Code § 5313.04

In the present case, the land installment contract substantially complies with the vast majority of the requirements of Ohio Rev. Code § 5313.02. The Brownfields contend, however, that Burchfield did not comply with three mandatory disclosures in the land installment contract. In particular, the Brownfields assert that Burchfield did not list a statement of the encumbrances against the property in the contract; failed to provide evidence of title; and held mortgages on the property in an amount greater than the balance due under the contract. The Brownfields assert that Ohio Revised Code § 5313.04 imposes strict liability upon a vendor who fails to comply with the provisions Section 5313.02 with respect to the requisite contents of the land installment contract. As a consequence, the Brownfields seek rescission of the contract or damages.

To begin, the Brownfields have provided no authority for the proposition that Ohio Revised Code § 5313.04 imposes strict liability on a vendor who fails to insert all the requisite statutory statements into a land installment contract. Indeed, the language of Section 5313.04 authorizing "appropriate relief" envisions that the Court will, based on the circumstances of each case, fashion a suitable remedy rather than impose absolute liability or the harsh remedy of rescission in each case. Moreover, "[d]espite the mandatory language of R.C. 5313.02, it is well-established that a land contract may be held to be enforceable as between parties even though it does not strictly comply with the requirements of R.C. 5313.02." *Gollihue v. Russo*, 152 Ohio App. 3d 710, 714, 713, 789 N.E.2d 1151, 1154 (Ohio Ct. App. Franklin 2003)(citations omitted).

Although it is a consumer protection statute, the land installment contract law was not written exclusively for the benefit of vendees. *Phillips v. May*, Case No. 2003-G-2520, 2004 WL 2526409 (Ohio Ct. App. Geauga, Nov. 9, 2004). "[I]t is only when the omission of information required by R.C. 5313.02 is 'substantial enough to cause a buyer to refuse to execute the contract if he had knowledge of such facts' does the contract become voidable." *Id.* (quoting *Woodling v. Gale*, No. 8568, 1977 WL 199080 (Ohio Ct. App. Summit, November 23, 1977)). The Brownfields have not demonstrated, as a matter of law, that the failure to disclose the existence of the encumbrances worked to their detriment, nor, for that matter that they had no knowledge of their existence.

The Court concludes that genuine issues of material remain as to whether Brownfields had knowledge of the encumbrances and as to the effect of such knowledge on their claim that they were harmed by the Section 5153.02-deficiencies in the land installment contract. The Brownfields do not contest that Jane Brownfield had actual notice of the FHA mortgage encumbering the property.[4] She does not dispute that John Burchfield, Steven's father, told her about the mortgage and the importance of making timely payments before she executed the contract.[5] Moreover, the

---

[4] In their Reply, the Brownfields argue that the Court should strike the statements in Steven, John and Janet Burchfield's affidavits to the effect that Jane Brownfield was aware of the encumbrances prior to the execution of the land installment contract. The Brownfields contend that the statements are self-serving and contradict Steven Burchfield's assertions in his Answer to the cross claim. To the extent the Brownfields contend that Burchfield is constrained or limited to a statement in his pleadings, they misapprehend his obligation under Federal Rule of Civil Procedure 56. In responding to a motion for summary judgment, Burchfield, as the nonmoving party "may not rest upon [his] mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court finds no basis to strike the affidavits as inconsistent with statements made in Burchfield's Answer. Moreover, there is no basis to strike the affidavits as self-serving, particularly where the Brownfields have filed no evidence under Rule 56 to dispute the Burchfields' statements that Jane Brownfield was aware of the encumbrances.

[5] Although it was after the execution of the land installment contract, the Brownfields do not contest that Steven Burchfield spoke to Jane Brownfield in the fall of 2000 and sent to her a copy of the FHA mortgage statement.

Brownfields were aware that they lacked evidence of property title to the property at the time they entered into the initial agreement for the land installment contract. At all times relevant to this case, the mortgages in favor of the United States and Old Canal were of public record in the Office of the Jefferson County Recorder. Thus, the Brownfields had, at least, constructive notice of the recorded mortgages.

Certainly, Ohio Rev. Code § 5313.02(B) (B) prohibits a vendor from holding a mortgage on property sold by a land installment contract in an amount greater than the balance due under the contract. Here, Burchfield had entered into two mortgage loans which exceeded the $73,000 due from the Brownfields under the land installment agreement. The Court concludes again, however, that absent evidence that they were harmed by the omission, the Brownfields have not demonstrated that they are entitled to judgment as a matter of law because Burchfield, as the land contract vendor, had previously executed mortgages in excess of the balance of the purchase price due from them on the land installment contract.

In this case, neither the Brownfields nor Steven Burchfield was represented by an attorney in the underlying transaction. Nor was any party aware of the requirements of Ohio Revised Code § 5313.02 when they completed the pre-printed, standardized form. Although the Brownfields assert that Burchfield "deliberately, intentionally, willfully and with malice failed to disclose the existence of the two mortgages . . . and that he intended to conceal the existence of the encumbrances from the Brownfields as part of the inducement to enter into the land installment contract," they have failed to adduce even a scintilla of evidence to support a finding that Burchfield had a malevolent intent.

At bottom, the Court concludes that numerous genuine issues of material fact remain for resolution at trial. The Court has already ordered the United States' and Old Canal's mortgages

foreclosed. The remaining issues concern the rights and priorities of the Brownfields and Burchfield. These issues include but are not limited to matters involving Burchfield's remedies, if any, against the Brownfields; whether the Brownfields were aware of the encumbrances on the subject property; whether the omission of the liens from the disclosure portion of the land installment contract prejudiced them and was substantial enough to cause the Brownfields to decline to execute the contract.

### IV.

For the foregoing reasons, the Brownfields' Motion for Summary Judgment (Doc. #53) is **DENIED**; Burchfield's Motion for Summary Judgment (Doc. # 68[6]) is **DENIED**. This matter will be set for trial by separate notice for a date as soon as practicable so that the Government may proceed with the underlying foreclosure of the subject property as expeditiously as possible.

**IT IS SO ORDERED.**

9-26-2006
DATED

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Burchfield's Motion was filed as part of his Memorandum in Opposition to the Brownfields' Motion for Summary Judgment.